# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| **ROGELIA DE LEON LOPEZ AND JUANA CASTILLO AVELAR** | **CIVIL DOCKET NO. 6:25-cv-01884** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **SCOTT LADWIG, ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## MEMORANDUM RULING

Before the Court is a PETITION FOR WRIT OF HABEAS CORPUS (the "Petition") filed by the Petitioners, Rogelia de Leon Lopez and Juana Castillo Avelar (collectively, "Petitioners"). [Doc. 1]. Petitioners also filed a MOTION FOR TEMPORARY RESTRAINING ORDER ("TRO") requesting the same relief. [Doc. 2]. Respondents Scott Ladwig, Todd Lyons, Kristi Noem, and Pamela Bondi (collectively, "Respondents") filed a Response on December 8, 2025, pursuant to the Court's instruction and expedited briefing schedule, to which Petitioner filed a Reply on December 10, 2025. [Docs. 10, 13]. For the following reasons, the Motion for TRO [Doc. 2] is DENIED. The Petition [Doc. 1] is DENIED except as otherwise provided below.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner Rogelia de Leon Lopez (hereinafter, "de Leon") is a Guatemalan national who entered the United States without being inspected by an immigration officer. [Docs. 10-1, 10-2]. She was initially apprehended by Department of Homeland Security ("DHS") Customs and Border Patrol ("CBP") on December 24, 2018, in McAllen, Texas. [Doc. 10-2, p. 3]. Petitioner de Leon filed an asylum

application in 2019, but DHS and de Leon's attorney filed a joint motion to dismiss the immigration proceedings on October 3, 2022. [Doc. 10-3]. The immigration judge dismissed the immigration proceedings without prejudice on October 11, 2022. [Doc. 10-4].

Petitioner de Leon applied to U.S. Citizenship and Immigration Services ("USCIS") to renew her work authorization in January 2025; however, the application was denied because de Leon no longer had a pending asylum application, and her removal proceedings had been closed. [Doc. 10-5]. DHS encountered Petitioner de Leon on September 4, 2025, at a confectionery in Cato, New York, where she admitted that she was present in the United States without documentation. [Doc. 10-2]. She was then detained by DHS and placed in removal proceedings under Immigration and Nationality Act ("INA") Sections 212(a)(6)(A)(i) (as an alien present without admission or parole) and 212(a)(7)(A)(i)(I) (as an alien not in possession of valid immigration documents). *See* [Doc. 10-1]. Respondents are currently detaining de Leon during the pendency of her removal proceedings, which Respondents argue is mandated by INA Section 235(b)(2), codified at 8 U.S.C. § 1225(b)(2). *See generally* [Doc. 10].

Respondents contend that Petitioner de Leon was provided a pregnancy test at the detention center, and her pregnancy was confirmed with an estimated due date of March 16, 2026. [*Id.*, p. 10]. De Leon had a master calendar hearing in her removal proceedings on December 2, 2025, and her next calendar master hearing is set for January 12, 2026. [Doc. 10-6]. Additionally, de Leon had a custody redetermination

hearing on December 15, 2025. [Doc. 10-7]. This Court ordered Respondents to update this Court as to the outcome of de Leon's custody redetermination hearing. [Doc. 15]. In their letter, Respondents notified this Court that the immigration judge denied Petitioner de Leon bond pursuant to the Board of Immigration Appeals' ("BIA") holding in *Matter of Yajure Hurtado*. [Doc. 16].

Petitioner Juana Castillo Avelar (hereinafter, "Avelar") is a Honduran national who crossed into the Untied States at an unknown location and at an unknown time. [Docs. 10-8, 10-9]. Petitioner Avelar claims that she entered the United States through Texas in 2005, but Respondents claim they are unable to verify this. [Doc. 10-9, p. 3]. Like Petitioner de Leon, DHS encountered Avelar at a confectionery in Cato, New York, where she admitted to being present in the United States without documentation. [*Id.*]. Consequently, and again like de Leon, Avelar was taken into custody and placed in removal proceedings under INA Sections 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I). *See* [Doc. 10-8]. Avelar did not report any medical issues to DHS at the time of her apprehension. [Doc. 10-9, p. 4].

Avelar is currently detained during the pendency of her removal proceedings, which Respondents again contend is permissible under 8 U.S.C. § 1225(b)(2). *See generally* [Doc. 10]. Avelar's next calendar hearing in her removal proceedings is scheduled for January 15, 2026. [Doc. 10-10]. Importantly, Petitioners do not contest any of the above facts. *See generally* [Doc. 13].

Petitioners filed a Petition for Writ of Habeas Corpus and Motion for TRO with this Court on November 25, 2025. [Docs. 1, 2]. This Court directed Respondents to

file a response on or before December 4, 2025, and Petitioners to file a reply on or before December 8, 2025. [Doc. 6]. Respondents filed their Response on December 8, 2025, and Petitioners filed their Reply on December 10, 2025. [Docs. 10, 13].

At bottom, Petitioners argue that they should not be subject to mandatory detention pursuant to Section 235(b)(2) of the INA, 8 U.S.C. § 1225(b)(2), but instead granted a bond redetermination hearing under Section 236 of the INA, 8 U.S.C. § 1226(a), and related agency regulations. *See generally* [Doc. 1]. In this regard, Petitioners assert the following claims for relief: (1) violation of the INA by applying § 1225(b) instead of § 1226(a) to Petitioners; (2) violation of Petitioner's Fifth Amendment right to due process through failure to provide a bond hearing under § 1226(a) and failure to provide an individualized hearing for domestic civil detention; and (3) violations of Fifth Amendment substantive due process through Respondents' failure to provide Petitioners with adequate medical attention. [*Id.*].

Respondents counter that Petitioners' detention under § 1225(b) instead of § 1226(a) is consistent with the plain statutory language and does not deprive Petitioners of due process. *See generally* [Doc. 10]. Furthermore, Respondents argue that Petitioners' claims of inadequate medical care amount to claims regarding their conditions of confinement, which is not cognizable under habeas review. [*Id.*]. Respondents also argue that this Court lacks jurisdiction over the claims asserted in the Petition because 8 U.S.C. §§ 1252(b)(9) and 1252(g) operate to strip this Court of jurisdiction. [*Id.*, pp. 12–18]. Finally, Respondents argue that Petitioners should be

required to exhaust their available administrative remedies before this Court considers their habeas petition. [*Id.*, p. 15].

As to the alleged lack of adequate medical care, Petitioner de Leon asserts the following: (1) that she—a pregnant woman—is unable to meet her nutritional needs because she cannot stomach the detention facility's food; (2) that she has lost over ten pounds during her detention; and (3) that she has difficulty sleeping while detained and that Respondents are not providing her with a pillow. [Doc. 1, ¶¶ 20–21]. Petitioner Avelar contends that she is severely anemic and has suffered the following: (1) an untreated urinary tract infection for which Respondents did not provide her with antibiotics or medical attention, despite her request; (2) an incident wherein she fainted in the dining area and, after regaining consciousness, began vomiting, having trouble breathing, and was hospitalized; and (3) muscle pain, nausea, and exhaustion as a result of her anemia. [Doc. 1, ¶¶ 24–29].

Petitioner de Leon also contends that Respondents are violating the APA and *Accardi* doctrine. [Doc. 1, ¶¶ 57–61]. Specifically, de Leon claims that Respondents are violating ICE Directive 11032.4, which Petitioners claim prohibits de Leon's detention as a pregnant woman absent extraordinary circumstances. [*Id.*]. In response, Respondents contend that Directive 11032.4 does not prohibit de Leon's detention because Directive 11032.4 requires detention if release is prohibited by law, and de Leon is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). [Doc. 10, pp. 36–38].

## LAW AND ANALYSIS

I. **Jurisdiction**

   A. **Writ of Habeas Corpus**

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST. Art. I, § 9, cl. 2). Under § 2241, the writ is extended *inter alia* to persons "in custody in violation of the Constitution or laws or treaties of the United States." 8 U.S.C. § 2241(c)(3). The Supreme Court has interpreted § 2241 as granting district courts with jurisdiction to hear habeas corpus challenges to the legality of the detention of aliens. *Rasul v. Bush*, 542 U.S. 466, 473 (2004). Here, Petitioners allege that they are being held in violation of the statutory scheme set forth in portions of the INA, codified at 8 U.S.C. §§ 1225 and 1226. *See* [Doc. 1, ¶ 33]. Thus, this Court possesses habeas jurisdiction because Petitioners claim they are being detained "in violation of the … laws … of the United States." 8 U.S.C. § 2241(c)(3); *see also* [Doc. 1, ¶ 33].

   B. **The INA's Jurisdiction-Stripping Provisions**

Clearly having general habeas jurisdiction over aliens, the Court next turns to Respondents' contention that this Court nonetheless lacks jurisdiction over the claims asserted in the Petition because 8 U.S.C. §§ 1252(b)(9) and 1252(g) operate to strip this Court of jurisdiction. [Doc. 10, pp. 12–18]. Petitioners respond that § 1252(b)(9) only prohibits challenges to removal orders, not challenges to unconstitutional detentions, and that § 1252(g) only bars jurisdiction for three

discrete immigration actions that Petitioner is not challenging. [Doc. 13, pp. 6–8]. Because the Court does not find at this stage that Petitioners are entitled to habeas relief, the Court declines to determine the applicability of the jurisdiction-stripping provisions of the INA cited by the Respondents.

## II. Classification Under 8 U.S.C. §§ 1225 and 1226

Petitioners' primary argument centers on their detention under 8 U.S.C. § 1225(b)(2), which mandates detention during the pendency of removal proceedings and does not allow for the possibility of a bond hearing, instead of 8 U.S.C. § 1226, under which a detainee may be eligible for a bond hearing. *See generally* [Doc. 1]. Relying on broad language included in the Supreme Court case of *Jennings v. Rodriguez*, 583 U.S. 281 (2018), Petitioners assert that § 1225 only applies to "recent arrivals," such as aliens who are crossing or have just recently crossed the border, or aliens who petition for admission at a port of entry. [Doc. 1, ¶ 36]. Petitioners further contend that § 1226 applies to aliens who enter without inspection and have resided in the country's interior for an extended period. [Doc. 1, ¶ 35]. Conversely, Respondents maintain that under a plain reading of the relevant statutes, § 1225 is a narrower statute applying to all aliens who are "applicants for admission," while § 1226 is a broader statute potentially applicable to any alien. [Doc. 10, p. 9].[1]

---

[1] Respondents also argue that Petitioners should be required to exhaust available administrative remedies before this Court considers their habeas petition. [Doc. 10, pp. 12–15]. Petitioners assert that the Immigration Judge ("IJ") will hold that Petitioners are ineligible for bond pursuant to *Matter of Yajure Hurtado*, and thus the exhaustion of administrative remedies is futile. [Doc. 1, ¶ 13].

This Court has previously explained its interpretation of the relevant statutes in ruling on other habeas petitions in which similar claims have been made. *See, e.g., Sandoval v. Acuna*, 2025 WL 3048926 (W.D. La. Oct. 31, 2025); *Oliveira v. Patterson*, 2025 WL 3095972 (W.D. La. Nov. 4, 2025); *Alves de Andrade v. Patterson*, 2025 WL 3252707 (W.D. La. Nov. 21, 2025). As such, it will truncate its analysis here.

Section 1225 of the INA governs the inspection, detention, and removal of aliens seeking admission into the United States. Section 1225 defines an "applicant for admission" as any alien who is "present in the United States who has not been admitted *or* who arrives in the United States." *Id.* § 1225(a)(1) (emphasis added). Under § 1225(a), aliens who are applicants for admission are <u>not</u> *per se* inadmissible if they arrive at a port of entry and present themselves for inspection. *See id.*

Conversely, an alien may be an "applicant for admission" who is also inadmissible by: (1) being present in the United States without having been admitted

---

As to Petitioner de Leon, she was denied bond at her custody redetermination hearing that occurred on December 15, 2025. [Docs. 15, 16]. Accordingly, de Leon has exhausted her administrative remedies, and Respondents' argument that de Leon is required to exhaust her administrative remedies is no longer applicable to her.

And as to Petitioner Avelar, an exception to exhaustion exists "where the attempt to exhaust such remedies would itself be a patently futile course of action." *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (per curiam) (internal quotations omitted). In the Board of Immigration Appeals' ("BIA") precedential decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), the BIA held that anyone deemed inadmissible under § 1182(a)(6)(A)(i) will be subject to mandatory detention without bond pursuant to § 1225(b)(2). Here, Petitioner Avelar was charged with removability under § 212(a)(6)(A)(i) of the INA, which is codified at 8 U.S.C. § 1182(a)(6)(A)(i). [Docs. 10-1, 10-8]. Because *Hurtado* was designated as a precedential decision, it will "serve as precedent[] in all proceedings involving the same issue or issues" upon BIA review. 8 C.F.R. § 1003.1(g)(2). Thus, an IJ would hold that Petitioner Avelar is not eligible for a bond hearing because she is detained under § 1225(b)(2). Accordingly, the Court finds that the exhaustion requirement is waived here because Petitioner Avelar's appeal to the BIA concerning her eligibility for a bond hearing or mandatory detention would be "futile" considering *Hurtado*. *See Fuller*, 11 F.3d at 62.

Page 8 of 18

or paroled; or (2) arriving at a time or place not designated by the Attorney General. *See id.*; *see also id.* § 1182(a)(6)(A)(i). An "applicant for admission" may also be inadmissible if they do not possess "a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document" "at the time of application for admission." *Id.* § 1182(a)(7)(A)(i)(I); *see also id.* § 1225(a)(1).

Section 1225(b) provides two categories of applicants for admission: those covered by § 1225(b)(1) and those covered by § 1225(b)(2). *Jennings*, 583 U.S. at 287. Section 1225(b)(1) provides for "expedited" removal and applies to those aliens who are inadmissible due to fraud, misrepresentation, or lack of proper documentation, and those who have not been continuously present in the United States for at least two years. 8 U.S.C. § 1225(b)(1)(A)(iii)(II). Section 1225(b)(2) is "broader" and serves as a "catchall provision" that employs standard removal proceedings and applies to all other applicants for admission who are not covered by § 1225(b)(1). *See Jennings*, 583 U.S. at 287; *Id.* § 1225(b)(2)(A)–(B). But importantly, under both provisions, aliens are subject to mandatory detention for the duration of their removal proceedings—whether they are subject to expedited removal proceedings under § 1225(b)(1) or standard removal proceedings under § 1229a.

### A. Petitioners are Subject to § 1225(b) Detention as "Applicants for Admission," and the Application of § 1225(b) to Petitioners Does Not Render § 1226(a) Superfluous

Here, considering the information presented to the Court, Petitioners have been properly classified as "applicants for admission." Again, an "applicant for admission" is broadly defined by statute as "[a]n alien present in the United States

who has not been admitted." 8 U.S.C. § 1225(a)(1). Petitioners entered the United States without inspection, have never been admitted or paroled, and are charged as inadmissible under §§ 1182(a)(6)(A)(i) and 1182(a)(7)(A)(i)(I). [Docs. 10-1, 10-2, 10-8, 10-9]. This Court therefore concludes that § 1225(b)(2)'s plain language and the "all applicants for admission" language of *Jennings* permits DHS to detain Petitioner under § 1225(b)(2). *See Jennings*, 283 U.S. at 287 ("[Section 1225(b)(2)] serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)…."); *see also* 8 U.S.C. § 1225(a)(1) (defining an "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States….").

Moreover, Petitioners do not allege that they were arrested on a warrant issued under § 1226(a), further indicating that Petitioners are properly detained under § 1225(b), not § 1226(a). *See id.* § 1226(a) ("*On a warrant* issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.") (emphasis added). All told, because Petitioners are inadmissible aliens who are "applicants for admission," § 1225(b) applies to them. They therefore "shall be detained for a proceeding under [§] 1229a." *Id.* § 1225(b)(2)(A).

Petitioners' argument that § 1226 would be rendered superfluous under Respondents' interpretation of § 1225(b)(2) is unpersuasive. The statutory scheme of the INA does not render these two provisions mutually exclusive, and there are many other categories of aliens to whom § 1226(a) is applicable, but not § 1225(b)(2). *See*

*Sandoval*, 2025 WL 3048926, at *5 (explaining that the alien in *Jennings* was an admitted alien who was not an "applicant for admission" but became subject to removal under § 1226(a)).

Decisions from other district courts throughout the United States, including ones in this district, have rejected Respondents' argument and found that aliens like the Petitioners are subject to detention under § 1226(a), not § 1225(b).[2] Although not binding upon this Court, this Court finds these cases unpersuasive for the following reasons.

First, many of these decisions rest upon the premise that §§ 1225 and 1226 are mutually exclusive. But in *Jennings*, the Supreme Court described § 1225(b) as applying "*primarily*" to aliens seeking entry—not exclusively. *See Jennings*, 583 at 297 (emphasis added); *see also Vargas Lopez*, 2025 WL 2780351, at *9 n.5 (D. Neb. Sept. 30, 2025). And the plain statutory language of § 1225(a)(1) clearly encompasses aliens "present in the United States who ha[ve] not been admitted." *See* 8 U.S.C. § 1225(a)(1). This is precisely Petitioners' status.

---

[2] *See e.g., Ventura Martinez v. Trump*, 3-25-cv-01445 (W.D. La. Oct. 22, 2025); *Kostak v. Trump*, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Lopez Santos v. Noem*, 2025 WL 2642278 (W.D. La. Sept. 11, 2025); *Lopez-Arevelo v. Ripa*, 2025 WL 2691828 (W.D. Tex. Sept. 22, 2025); *Barrera v. Tindall*, 2025 WL 2690565 (W.D. Ky. Sept. 19, 2025); *Lopez-Campos v. Raycroft*, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Giron Reyes v. Lyons*, 2025 WL 2712427 (N.D. Iowa Sept. 30, 2025); *Belsai D.S. v. Bondi*, 2025 WL 2802947 (D. Minn. Oct. 1, 2025); *Garcia Jimenez v. Kramer*, 2025 WL 2374223 (D. Neb. Aug. 14, 2025); *Arrazola-Guzman v. Andrews*, 2025 WL 2617256 (E.D. Cal. Sept. 9, 2025); *but see, e.g., Vargas Lopez v. Trump*, 2025 WL 2780351 (D. Neb. Sept. 30, 3025); *Chavez v. Noem*, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025); *Pena v. Hyde*, 2025 WL 2108913, (D. Mass. July 28, 2025); *Matter of Yajure Hurtado,* 29 I&N Dec. 216 (BIA 2025).

Second, many other district courts correctly identified that some petitioners were subject to § 1229a standard removal proceedings instead of § 1225(b)(1) expedited removal proceedings. However, these courts conflated the type of removal proceeding—*i.e.,* standard or expedited removal—with the source of detention authority, either § 1225(b)(2) or § 1226.

Finally, many of these district court cases were decided before—or soon after—the BIA issued its opinion in *Matter of Yajure Hurtado.* 29 I&N Dec. 216 (BIA 2025). In *Hurtado*, the BIA held that a noncitizen who entered without inspection remains an "applicant for admission" unless and until lawfully admitted—even after years of residence—and is therefore subject to detention under § 1226(b)(2). *Id.* at 228. The BIA further explained that unlawful presence over time does not confer "admitted" status, as doing so would improperly reward evasion of inspection with eligibility for a § 1226 bond hearing. *Id.*

And while, of course, the BIA's precedential decisions are not binding upon this Court, the BIA is a court that possesses subject matter expertise on immigration matters. Thus, when considering the BIA's thorough analysis of the plain statutory text and legislative history of the INA, this Court finds *Hurtado* persuasive. *See id.* at 222–225 (discussing the legislative history of the INA); *see also Matter of Lemus-Losa*, 25 I&N Dec. 734, 743 (BIA 2012) (observing that "many people who are not *actually* requesting permission to enter the United States in the ordinary sense are nevertheless deemed to be "seeking admission" under the immigration laws"); *see also Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (noting that courts may defer

to an agency's judgment when its analysis is thorough and its reasoning is sound). Finally, though not necessary to reach its conclusion, this Court notes that its analysis comports with the legislative history of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, Div. C, § 302(a), 110 Stat. 3009-546, 3009-579, which added § 1225(a)(1) in 1996.[3] *See Sandoval*, 2025 WL 3048926, at *6.

### III. Inadequate Medical Care

Petitioners' claims also concern their medical treatment and the food and sleeping materials provided to them while in detention. [Doc. 1, ¶¶ 20–29]. These claims amount to "conditions of confinement" claims, as evidenced by Petitioners' references in their Petition to their "conditions of detention." [*Id.*, ¶ 22].

In the Fifth Circuit, conditions of confinement claims are not cognizable under habeas. *Rice v. Gonzalez*, 985 F.3d 1069, 1070 (5th Cir. 2021); *see also Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976) ("Simply stated, habeas is not available to review questions unrelated to the cause of detention. Its sole function is to grant relief from unlawful imprisonment or custody[,] and it cannot be used properly for any other purpose.")

---

[3] For this Court to conclude that aliens who have unlawfully entered the United States and managed to remain in the country for a sufficient period of time are entitled to a bond hearing, while those who seek lawful entry and submit themselves for inspection are not, not only conflicts with the unambiguous language of the governing statutes, but would also seemingly undermine the intent of Congress in enacting the IIRIRA. This Court thus "refuse[s] to interpret the INA in a way that would in effect repeal [Congress's] statutory fix." *United States v. Gambino-Ruiz*, 91 F.4th 981, 990 (9th Cir. 2024).

If a favorable determination would not automatically entitle the petitioner to immediate or accelerated release, then the proper vehicle for their claim is a § 1983 civil rights suit. *See Rice*, 985 F.3d at 1070. Here, assuming *arguendo* that Petitioners could succeed on their claims regarding the conditions of confinement or inadequate medical care, then Respondents would be required to provide Petitioner de Leon with adequate nutrition and sleeping arrangements and Petitioner Avelar with adequate medical treatment for her anemia.

Yet even if successful, neither Petitioner would be entitled to release from detention for the reasons explained above. Thus, because Petitioners' claims of inadequate medical care are properly characterized as claims regarding their conditions of confinement, these claims are not cognizable under habeas.

## IV. APA Violations and the *Accardi* Doctrine

Petitioner de Leon contends that Respondents are violating the APA and *Accardi* doctrine in failing to release her as a pregnant woman. Specifically, de Leon contends that Respondents are violating 8 C.F.R. § 212.5(b)(2), which she purports requires DHS to release her from detention. [Doc. 1, ¶ 60]. Additionally, de Leon argues that ICE Directive 11032.4, *Identification and Monitoring of Pregnant, Postpartum, or Nursing Individuals*, requires her release.[4] [*Id.*, ¶¶ 58–59].

In response, Respondents maintain that § 212.5(b)(2) gives DHS the *discretion* to parole aliens within certain categories, including women who have been medically

---

[4] The pertinent portion of ICE Directive 11032.4 is as follows: Generally, ICE should not detain, arrest, or take into custody for an administrative violation of the immigration laws individuals known to be pregnant, postpartum, or nursing unless release is prohibited by law or exceptional circumstances exist.

Page 14 of 18

certified as pregnant. [Doc. 10, p. 36]. But Respondents aver that this discretion is exercised on a "case-by-case basis" for "urgent humanitarian reasons" or "significant public benefit." [*Id.*]. And as to the ICE Directive, Respondents assert that DHS has not violated the ICE directive or, alternatively, that an agency directive is not a final agency action subject to APA review. [*Id.*, p. 37].

Final agency actions are required for APA review. 5 U.S.C. § 706. However, directives and internal guidance are not final agency actions. *See Perez v. Mortgage Bankers Ass'n*, 575 U.S. 96–97 (2015) ("Not all 'rules' must be issued through the notice-and-comment process. Section 4(b)(A) of the APA provides that, unless another statute states otherwise, the notice-and-comment requirement 'does not apply' to 'interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice.'"). Accordingly, "[i]nterpretive rules 'do not have the force and effect of law and are not accorded that weight in the adjudicatory process.'" *Id.*

ICE Directive 11032.4 is a general statement of policy or rule of agency procedure or practice. As a result, it does not constitute a final agency action subject to APA review. Thus, de Leon's APA challenge to Respondents' alleged failure to follow the ICE Directive fails.

As to the Federal Regulation, Petitioner de Leon's APA claim also fails because 8 C.F.R. § 212.5 gives DHS the discretion to parole aliens who are medically certified as pregnant. *See* 8 C.F.R. § 212.5 ("The Secretary or his designees may invoke, *in the exercise of discretion*, the authority under section 212(d)(5)(A) of the Act.") (emphasis

added). But this discretion is exercised on a case-by-case basis. *See id.* Accordingly, DHS has not violated the APA by purportedly exercising its lawful discretion in refusing to parole Petitioner de Leon because—as discussed above—she is subject to mandatory detention under § 1225(b)(2).

However, under the *Accardi* doctrine, agencies are bound to abide by their own regulations or internal procedures. *See Richardson v. Joslin*, 501 F.3d 415, 418 (5th Cir. 2007); *see also Accardi v. Shaugnessy*, 347 U.S. 260, 268 (1954). Consequently, courts may set aside agency action that is not in compliance with the agency's own regulations or internal procedures. *See Lesli v. Att'y Gen of U.S.*, 611 F.3d 171, 175 (3d Cir. 2010). Here, the pertinent ICE directive provides that ICE "should not detain … individuals known to be pregnant … unless release is prohibited by law." *See supra* note 4.

Petitioner de Leon's release is not prohibited by law because other federal regulations specifically contemplate paroling individuals who are subject to § 1225(b) detention. *See* 8 C.F.R. § 235.3(c)(1) ("Except as otherwise provided in this chapter, any arriving alien who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to section 240 of the Act shall be detained in accordance with section 235(b) of the Act. Parole of such alien shall only be considered in accordance with § 212.5(b) of this chapter."). And under 8 C.F.R. § 212.5(b)(2), DHS may parole "women who have been medically certified as pregnant" who have been detained in accordance with § 235.3(c) "only on a case-by-case basis for 'urgent humanitarian reasons' or 'significant public benefit,' provided

the aliens present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b)(2).

Here, Respondents only argue that Petitioner de Leon's release is prohibited by law. But as noted above in 8 C.F.R. § 235.3(c)(1), aliens detained under section 235(b) of the INA—*i.e.,* 8 U.S.C. 1225(b)—may be paroled if they fall under 8 C.F.R. § 212.5(b), which de Leon does as a pregnant woman. Moreover, de Leon is subject to standard removal proceedings under section 240 of the INA, codified at 8 U.S.C. § 1229a, further indicating that she is within the category of aliens for which 8 C.F.R. § 235.3(c)(1) permits parole. Finally, although it is true that ICE Directive 11032.4 could be altered or rescinded without using formal notice and comment procedures, it has not.

If Petitioner de Leon's continued detention and denial of parole do not comport with the policy set forth in ICE Directive 11032.4, then the Court must require Respondents to abide by their own policy. Accordingly, Respondents are directed to show cause to this Court why Petitioner de Leon's release is impermissible or otherwise what exceptional circumstances exist that prohibit de Leon's release on parole pursuant to ICE Directive 11032.4.

## CONCLUSION

For the foregoing reasons, the Court finds that Petitioners are lawfully detained under § 1225(b)(2) and are therefore not entitled to a bond hearing. Additionally, the Court finds that Petitioners' claims of inadequate medical care amount to claims as to their conditions of confinement and are not cognizable under

habeas review. Finally, the Court finds that Respondents have not violated the APA. However, this Court finds that Respondents have not demonstrated how Petitioner de Leon's continued detention is consistent with the *Accardi* doctrine given the existence of ICE Directive 11032.4.

Accordingly,

IT IS HEREBY ORDERED that the MOTION FOR TEMPORARY RESTRAINING ORDER [DOC. 2] is DENIED.

IT IS FURTHER ORDERED that except as otherwise noted with respect to Petitioners' compliance with ICE Directive 11032.4, the PETITION FOR WRIT OF HABEAS CORPUS [Doc. 1] is DENIED.

IT IS FURTHER ORDERED that a Show Cause Hearing is set for January 8, 2026, at 2:00 p.m. in which Respondents shall be prepared to show cause why Petitioner de Leon's release on parole is impermissible or otherwise what exceptional circumstances exist that prohibit de Leon's release on parole pursuant to ICE Directive 11032.4.

THUS, DONE AND SIGNED in Chambers on this 2nd day of January 2026.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE